UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

NAOMI HENEAGE,

    Plaintiff,

v.

DTE ENERGY SERVICES, INC., a Michigan corporation; and NEWMONT NEVADA ENERGY INVESTMENT, LLC, a Nevada corporation,

    Defendants.

Case No. 3:11-cv-0686-LRH-(WGC)

ORDER

Before the court is defendant Newmont Nevada Energy Investment, LLC's ("Newmont") motion for summary judgment. ECF No. 91. Plaintiff Naomi Heneage ("Heneage") filed an opposition (ECF No. 99) to which DTE replied (ECF No. 104).

**I.    Facts and Procedural Background**

Defendant Newmont owns the TS Power Plant in Dunphy, Nevada. In late 2005, Newmont and defendant DTE Energy ("DTE") entered into a contract for the operation of the power plant known as the Operation & Maintenance Services Agreement whereby DTE would operate the power plant on Newmont's behalf. Under the agreement, DTE was responsible for staffing and running the power plant while Newmont set certain operating objectives for the plant.[1] To meet its staffing needs, DTE held a job fair in Elko, Nevada, during which plaintiff

---

[1] Defendant Newmont had no obligation under the agreement to staff or run the power plant during the time that DTE was operating the plant. Instead, under the agreement, Newmont's interests were overseen by an "owner's representative" who had an office at the plant, but no direct authority over the DTE employees. Rather, the owner's

1

Heneage applied for a position with DTE. Heneage was eventually hired as a shift supervisor and began her employment at the plant in March 2007.

In early 2010, Newmont unilaterally terminated the operating agreement with DTE effective June 30, 2010. As a result of Newmont's termination of the operating agreement, all DTE power plant employees were terminated on June 30, including Heneage. Defendant Newmont then allowed current DTE employees to apply for retention employment at the plant. Heneage applied for retention employment, but was not retained by Newmont.

On September 23, 2011, Heneage filed a complaint against both DTE and Newmont alleging two causes of action: (1) Title VII gender discrimination and retaliation; and (2) Family Medical Leave Act ("FMLA") retaliation. ECF No 2. In response, defendants filed a motion for judgment on the pleadings (ECF No. 32) which was granted by the court (ECF No. 42). Heneage then appealed the court's order of dismissal to the Ninth Circuit. ECF No. 44.

On June 18, 2015, the Ninth Circuit affirmed in-part and reversed in-part the court's order of dismissal. ECF No. 52. In particular, the Ninth Circuit held that Heneage had raised a permissible inference of gender discrimination by defendant Newmont as well as a permissible inference of Title VII retaliation by both defendants. *Id*. Thereafter, on October 22, 2015, Heneage filed a second amended complaint against defendants alleging two causes of action: (1) Title VII gender discrimination against defendant Newmont; and (2) Title VII retaliation against both defendants. ECF No. 63. In response, Newmont filed the present motion for summary judgment. ECF No. 91.

**II.     Legal Standard**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine issue as to any material fact and that the [moving party] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light

---

representative set the desired operating schedule and operating objectives for the power plant which would then be met by DTE and its employees.

most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also, Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See Id.* at 252.

**III.   Discussion**

    **A. Title VII Gender Discrimination**

Title VII prohibits discrimination against an employee or an applicant for employment on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a). To prevail on a Title VII discrimination claim, a plaintiff must establish a *prima facie* case of discrimination by presenting evidence that "gives rise to an inference of unlawful discrimination." *Cordova v. State Farm Ins. Co.*, 124 F.3d 1145, 1148 (9th Cir. 1997); *see also, McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792, 802 (1973). A plaintiff can establish a *prima facie* case of discrimination through the burden shifting framework set forth in the *McDonnell Douglas* decision. *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007).

Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802. To establish a *prima facie* case, the plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for her position and was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (citing *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1126 (9th Cir. 2000)); *see also, Bodett v. Coxcom, Inc.*, 366 F.3d 726, 743 (9th Cir. 2004); *Orr v. Univ. Med. Ctr.*, 51 Fed. Appx. 277 ("An implicit part of the "qualification" requirement is that the plaintiff was performing her job satisfactorily).

The court has reviewed the documents and pleadings on file in this matter and finds that, viewing the evidence in the light most favorable to Heneage as the non-moving party, she has failed to establish a *prima facie* Title VII gender discrimination claim against Newmont and even if she had, there is no evidence that Newmont's decision to not retain her for employment at the power plant was pretext or discriminatory. In her complaint, Heneage alleges that she was not retained for employment by Newmont despite the fact that she had been performing the job satisfactorily prior to her termination from DTE. *See* ECF No. 63. The court acknowledges that whether Heneage was performing her job satisfactorily during her employment with DTE is heavily disputed by the parties and thus is inappropriate to determine on summary judgment. *See Libby*, 477 U.S. at 248. However, the court finds that Heneage has failed to provide any evidence that similarly situated individuals outside of her protected class were treated more favorably.[2]

To support her claim of gender discrimination, Heneage contends that out of hundreds of employees at the power plant that applied for retention employment, four (4) women, including herself, were not chosen for retention employment. However, the undisputed evidence

---

[2] In its motion, Newmont concedes that Heneage belongs to a protected class and was subject to an adverse employment action. *See* ECF No. 91.

establishes that out of all of the employees who applied for retention employment, thirteen (13) of those not chosen were male. Thus, out of the total seventeen people not retained for employment with Newmont, less than twenty-five percent were female. Further, the fact that four women were not chosen for retention employment by Newmont, alone, is insufficient to establish gender discrimination in violation of Title VII. Heneage must proffer some evidence that the decision to not retain her was gender motivated and Heneage has failed to proffer such evidence. *Reese*, 208 F.3d at 738 (holding that a plaintiff "must point to some facts in the record that demonstrate a genuine issue of material fact"). The only other evidence Heneage submitted to the court on this issue is that James Risi ("Risi"), a male, was chosen for the shift supervisor position with Newmont. However, the mere fact that an applicant outside of the plaintiff's protected class was selected is insufficient to raise an inference of discrimination. *See Davis*, 520 F.3d at 1089-90. Rather, Heneage must show at a minimum that her qualifications were at least equal to the selected applicant, if not better. *Id*. And here, it is undisputed that at the time Newmont terminated the Operation & Maintenance Services Agreement, Risi had been performing the shift supervisor position for several months while Heneage was on leave. Further, the only evidence submitted to the court concerning Heneage and Risi's qualifications for the shift supervisor position establish that Risi was more qualified for the position.[3] For example, Risi had over a decade of experience working in operations at another coal power plant prior to taking over the shift supervisor position with DTE while Heneage was on leave. In contrast, Heneage had only been working in power plant operations for only a few years, including the time spent at DTE. Further, Heneage herself recognized that Risi was knowledgeable, hardworking and qualified for the position and even congratulated him when he was selected as shift supervisor acknowledging that Risi "was fine for the job" while DTE supervisors repeatedly complemented Risi on his "ability to turn the crew and other employees around" during the few short months he was covering for Heneage. *See* ECF No. 91, p. 13. Therefore, based on the lack

---

[3] The court notes that in contrast to Heneage's claim that she was performing her job satisfactorily, the evidence of both her and Risi's employment qualifications is undisputed.

of evidence of any gender motivation or pretext in Newmont's decision, the court finds that she has failed to establish a claim of Title VII gender discrimination.

### B. Title VII Retaliation

In addition to prohibiting discrimination, Title VII also prohibits discriminatory retaliation by making it unlawful "for an employer to discriminate against any of [its] employees or applicants for employment because [she] has opposed any practice that is made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of Title VII retaliation, a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the protected activity and the adverse employment action. *Brooks v. City of San Mateos*, 229 F.3d 917, 928 (9th Cir. 2000) (citing *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997)). If a plaintiff establishes a *prima facie* case of Title VII retaliation "the burden shifts to the employer to present legitimate reasons for the adverse employment actions." *Id*. "Once the employer carries this burden, [a plaintiff] must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext" for discrimination or a claim for Title VII retaliation fails. *Id*.

In its motion for summary judgment, Newmont contends that Heneage has failed to establish a *prima facie* case of Title VII retaliation because (1) she did not engage in any protected activity under Title VII; and (2) even if the conduct Heneage engaged in during her employment constituted a protected activity under Title VII, there is no causal link between that conduct and Newmont's decision to not offer her retention employment. *See* ECF No. 91. As addressed below, the court agrees.

First, reviewing the evidence in the light most favorable to Heneage as the non-moving party, the court finds that she did not engage in any activity protected under Title VII during her employment. Under Title VII, a protected activity is defined to mean either (1) an "employee's participation in the machinery set up by Title VII to enforce its provisions" (the participation clause), or (2) an "employee's opposition to conduct made an unlawful employment practice [under Title VII]" (the opposition clause). *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997). The participation clause generally applies only when an employee initiates formal

6

proceedings under Title VII including EEOC or other state law discrimination charges. *See, e.g., Eastland v. Tennessee Valley Auth.*, 704 F.2d 613, 627 (11th Cir. 1983) (holding that contacting an EEOC officer is protected activity under Title VII); *Gonzalez v. Bolger*, 486 F.Supp. 595, 601 (D. D.C. 1980) ("Once plaintiff . . . initiates pre-complaint contact with an [EEOC] counselor . . . he is participating in a Title VII proceeding." (citations omitted)). Here, it is undisputed that Heneage did not initiate any EEOC or state law discriminatory proceeding during her employment. Thus, she has failed to establish a *prima facie* claim for Title VII retaliation under the participation clause.

To establish Title VII retaliation under the opposition clause, an employee must "oppose" a real or perceived unlawful employment practice engaged in either by the employer or by other employees. *Sias v. City of Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978). In contrast to the participation clause, the opposition clause "serves a more limited purpose" and is more narrow in its terms. *Id*. In order to "oppose" an employer's discriminatory practice, the plaintiff must "resist or antagonize" the employer. *Crawford v. Metro Gov't of Nashville & Davidson County*, 555 U.S. 271, 276 (2009). This requires the employee to actually oppose discrimination or a discriminatory act prohibited under Title VII and to communicate that opposition directly to the employer, otherwise a plaintiff's conduct will not be deemed a protected activity. *Wynn v. Paragon Systems, Inc.*, 301 F. Supp. 2d 1343 (S.D. Ga. 2004). Further, in actions involving opposition of discriminatory conduct related to other employees' claims of discrimination, a plaintiff must actually "support or encourage" those other employees to file complaints of discrimination. *Correa v. Mana Products, Inc.*, 550 F. Supp. 2d 319, 327 (E.D. N.Y. 2008). In such cases, a plaintiff does not engage in protected activity if the plaintiff is "one of the people [another employee] complained had discriminated against them" as a matter of law. *Id*; *see also, Whatley v. UPS*, 2009 U.S. Dist. LEXIS 103647, at *28 (E.D. Mo. Nov. 6, 2009) (holding that those who engage in discrimination, or who oppose another employee's allegations of discrimination, are barred from claiming they engaged in protected activity because, rather than advancing the goals of Title VII, their activities "place [their employee] in jeopardy of violating another employee's statutory rights under Title VII.").

In her initial complaint, Heneage alleges that she engaged in protected activity when, beginning in March 2009, she supported a female subordinate of her department, Kay Daly ("Daly"), in initiating an internal investigation and filing an EEOC complaint for a hostile working environment arising from allegations of ongoing sexual harassment directed at Daly. *See* ECF No. 1. In her second amended complaint filed after remand, Heneage again alleges the same protected activity. *See* ECF No. 63. Specifically, Heneage alleges that she was retaliated against by defendants for being involved in the investigation and initiation of Daly's hostile work environment claim. *Id*.

The court has reviewed the undisputed evidence in this action and finds that Heneage did not, in fact, support Daly in filing her EEOC complaint and thus, she did not engage in any protected activity. Beginning in March 2009, Daly made an initial complaint about ongoing discrimination to DTE's human resources department. As part of her complaint, Daly specifically alleged that Heneage, Daly's shift supervisor, had engaged in some of the alleged harassment. During the subsequent internal investigation of Daly's complaints, Heneage was interviewed by DTE's human resources department and stated that she did not support Daly's complaint nor did she think that there was any truth in Daly's allegations as Daly "accuses people of all kinds of things but never has any facts." Eventually, Daly filed an EEOC complaint and during the EEOC investigation Heneage once again stated that Daly was not subject to any targeted harassment and that Daly's complaints against her in particular were unfounded. Thus, the evidence in this action establishes that Heneage had a subordinate accuse her of discriminatory conduct as part of a hostile working environment claim and that she did not support that employee in the subsequent investigation or otherwise oppose DTE's allegedly discriminatory conduct. These facts alone preclude Heneage's claim of engaging in protected activity under the opposition clause. *See Correa*, 550 F. Supp. 2d at 327-38 (holding that a plaintiff who did not believe another employee suffered discrimination and was one of the people complained about has not met the requirement of the opposition clause); *Whatley*, 2009 U.S. Dist. LEXIS 103467, at *28. Therefore, the court finds that Heneage has also failed to establish a claim for Title VII retaliation under the opposition clause.

Second, the court finds that Heneage has failed to establish any causal nexus between her alleged protected activity in helping a subordinate file a hostile working environment claim and Newmont's decision to not retain her for employment at the TS Power Plant. It is axiomatic that "when the law grants persons the right to compensation for injury from wrongful conduct, there must be some demonstrated connection, some link, between the injury sustained and the wrong alleged." *University of Tex. Sw. Med. Center v. Nassara*, 570 U.S. 338, 133 S. Ct. 2517, 2522 (2013). In the realm of Title VII retaliation, this means that a plaintiff must show that the protected activity is the "but-for" cause of the alleged adverse employment action. *Id.* at 2533 ("Title VII retaliation claims must be proved according to traditional principles of but for causation."). This standard "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.*

Here, Heneage has not shown any causal link between her termination and her alleged protected activity. It is undisputed that Newmont terminated the Operation & Maintenance Services Agreement and, as a result, all DTE employees working at the TS Power Plant were terminated. In this regard, Heneage was not treated any differently than any other DTE employee, regardless of any protected activity she may have allegedly engaged in. Further, as to her argument that she was retaliated against because DTE impermissibly influenced Newmont's hiring decision, Heneage has failed to establish any causal link between her asserted conduct and Newmont's decision to not retain her. To establish such a second-hand claim, Heneage must show that Newmont's decision not to retain her was "not actually independent because [DTE] influenced or was involved in the decision" in such a manner that no fact-finder could find that Newmont's decision was independent. *Poland v. Chertoff,* 494 F.3d 1117, 1184 (9th Cir. 2007). And Heneage has failed to proffer any evidence that Newmont's hiring process was not wholly independent or that DTE employees had any part in the decision making process of which employees were retained and which ones were not. The evidence in this action shows that the parties making the employment decisions for Newmont had no knowledge of any of the issues related to Heneage or Daly. Rather, the evidence establishes that as part of Newmont's hiring process, Newmont asked DTE for employment verifications and DTE provided such

verifications by including only the dates of employment for each employee. There is no evidence that any DTE employees had any input into Newmont's ultimate decision not to retain Heneage, nor is there any evidence that any DTE employee supplied Newmont with information about Heneage that would have precluded her employment. Absent such evidence, Heneage's claim fails. *Brungart v. Bellsouth Telecomms. Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) ("A decision maker cannot have been motivated to retaliate by something unknown to him."). Accordingly, the court shall grant Newmont's motion for summary judgment.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (ECF No. 91) is GRANTED.

IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of defendant Newmont Nevada Energy Investment, LLC and against plaintiff Naomi Heneage in this action.

IT IS SO ORDERED.

DATED this 10th day of February, 2018.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE